[Civ. No. 6563.   Third Dist.   Nov. 7, 1941.]

LOUIS L. SILVER, Plaintiff and Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Defendants and Appellants.

Burke & Rawles for Plaintiff and Appellant.

Preston & Gibson for Defendants and Appellants.

ROSS, J. *pro tem.*—Bank of America National Trust and Savings Association, a corporation, is referred to herein as Bank of America or as "the bank," and California Lands, Inc., a corporation, as Calif. Lands.

Defendant Calif. Lands was vendee under an agreement with Bank of America of numerous parcels of land owned by the bank, by the terms of which agreement the bank retained title and Calif. Lands sought other purchasers, and when sales were made title passed directly from the bank to the individual purchaser. Calif. Lands also had the right to lease or rent said lands.

In November, 1937, Calif. Lands leased the parcel of land involved herein, a ranch, to plaintiff for three years. One of the terms of the written lease was:

"If the lessor makes a *bona fide* sale of said premises or any part thereof prior to the 31st. day of October, 1940, this lease on said part so sold shall thereupon terminate at the option of the lessor, and the lessee, within sixty days after receiving notice of such sale, shall surrender possession of the premises to the lessor."

On April 27, 1939, by writing, the lease was modified to extend the term to October 31, 1941, and to add this paragraph:

"Lessor agrees to construct on the premises a 12-cow sanitary walk-thru barn and milk house, properly lighted and piped for water, at a total cost not to exceed the sum of $1300.00, and further agrees to install on the premises a 1½

H. P. electric motor and small centrifugal pump for domestic water service.''

Calif. Lands then proceeded to have such a barn built. It was finished June 25, 1939. In July the inspector for the State Department of Agriculture required certain changes, which were made, and on August 3, 1939, the same inspector accepted the building as complete and sanitary. However, some time later the plaster in the milk room cracked badly with the result that the milk room became ''unsanitary.'' The motor and pressure system required by the modification agreement were installed by Calif. Lands. Certain sanitary equipment which the state inspector required Silver to obtain before he could have a permit to sell milk was not, however, acquired by him.

In September, 1939, one Lagomarsino began negotiating with Calif. Lands for purchase of this ranch. He paid $250 to a realtor who handled deals for Calif. Lands as down payment with an offer to purchase for $13,000, but this offer was not accepted. The realtor was asked to try to get a higher bid from him, and he contacted Lagomarsino and tried to get him to offer $15,000. Lagomarsino orally offered $14,000, and the realtor submitted this to Calif. Lands. The pricing committee passed favorably on this and the realtor telephoned to Lagomarsino and stated that his offer was accepted, and Lagomarsino expressed satisfaction. This was on September 11, 1939. On September 12th Calif. Lands gave plaintiff written notice that the ranch had been sold and he was required to surrender possession within sixty days.

After the expiration of sixty days a three-day notice to vacate was served on plaintiff and then an action was filed for possession of the premises. In February 1940, this action came on for trial, and a non-suit was granted, apparently because there had been no sale actually made to Lagomarsino on September 12, 1939, the day the sixty-day notice was given. The evidence in the instant case shows, however, that a deed, deed of trust, note, escrow instructions, etc., for the $14,000 deal between Calif. Lands, Bank of America, and Lagomarsino were all prepared soon after September 11th, and Lagomarsino testified that he had at all times been ready to go ahead with the deal and that plaintiff's withholding of possession had been the only drawback.

In April, 1940, the present action was commenced in three counts. In the first plaintiff alleged fraudulent misrepresentation by defendants of the fact of a sale to Lagomarsino when there was as yet no actual sale made, and asked $250 actual damages for the expense he had incurred in looking for another ranch to move to and $5000 exemplary damages. In Count II plaintiff alleged the action for possession of the premises, which had resulted in a non-suit, had been malicious and without probable cause, and asked for $1850 actual damages and $5000 exemplary damages. In Count III plaintiff alleged a breach of the modification agreement in that the barn constructed was not sanitary and that he had therefore been unable to use it to produce market milk, but had been forced to sell his milk and cream for butter fat or cheese only, to his damage in the sum of $1881.60.

On the trial special interrogatories were answered by the jury as follows:

"1. Was the Bank of America National Trust and Savings Association, a corporation, guilty of fraud as alleged in Count I of the complaint? Yes.

"2. Was California Lands, Inc., guilty of fraud as alleged in Count I of the complaint? Yes.

"3. Was Bank of America National Trust and Savings Association guilty of malice as alleged in Count II of the complaint? No.

"4. Was Calif. Lands Inc. guilty of malice as alleged in Count II of the complaint? No."

A general verdict was rendered for plaintiff for $250 compensatory damages on Count I, for the defendants on Count II and for plaintiff for $1881.60 damages on Count III.

A motion for judgment notwithstanding the verdict was granted to both defendants on Count I but denied as to Count III.

Thereafter, by a different judge than the one who tried the case, a new trial was denied to plaintiff as to Count I, but was granted as to Count II, and a new trial was denied to defendants as to Count III.

Defendants appealed from this judgment as to Count III and from the order granting a new trial as to Count II. A reporter's transcript was duly obtained and brought up on these appeals. Plaintiff appealed from the judgment as to Count I but had no record prepared, either by way of bill

of exceptions or reporter's transcript. His appeal is on the judgment roll alone therefore, as a motion to consolidate the appeals was denied by this court. (*Silver* v. *Bank of America,* 43 Cal. App. (2d) 835 [111 Pac. (2d) 666].) However, all the appeals are apparently considered to be before the court at this time, and are all embodied in the instant case file of this court.

There being no error whatever apparent in the judgment roll as to Count I, the judgment for defendants on that count must be affirmed. ■ The new trial as to Count II was granted solely because of the giving of Instruction 18, the judge feeling that the jury should have been advised that good faith was a required element of the sale.

This instruction was as follows:

"I instruct the jury that the words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning; unless used by the parties in a technical sense or unless a special meaning is given to them by usage in which case the latter may be followed. I instruct you, therefore, that if you find that under the terms of the lease between California Lands, Inc., a Corporation, and Louis L. Silver, which lease was introduced into evidence here, that it was provided that said lease should terminate in the event that said California Lands, Inc., makes a *bona fide* sale of said premises to a third party during the term thereof, then I instruct you that the language relative to the making of said sale by said California Lands, Inc., is to be considered by you in their ordinary and popular sense rather than according to their strict legal meaning."

The new trial was not granted because of any insufficiency of the evidence, and a consideration of the whole record discloses no ground upon which it should have been granted. The jury, in other instructions, were fully advised what a *bona fide* sale and an actual sale meant. In said Instruction 18 the words *"bona fide* sale" were used and followed by the words, "said sale," which plainly refers to a *bona fide* sale. The words *"bona fide"* mean "in good faith."

The word sale means a *bona fide* sale, not a fraudulent one (*Davis* v. *Schweikert,* 130 Cal. 143, 147 [62 Pac. 411] ; *Ogle* v. *Hubbel,* 1 Cal. App. 357 [82 Pac. 217] ). "Sale" in general may even mean only an intention to sell (*Estate of*

*Goetz,* 13 Cal. App. 198 [109 Pac. 145]) or an agreement to sell (*Glenn* v. *Inouye,* 62 Cal. App. 259 [216 Pac. 418]).

It appears that the jury was correctly instructed and the motion for a new trial on Count II should not have been granted.

As to Count III the jury found for the plaintiff for the full amount prayed for in the complaint. Viewed in any possible light the evidence will not support a finding for the full amount. Depending upon what testimony is used the figures for the total loss of plaintiff by reason of having to sell his milk for other than market milk purposes varies from considerably less than $1000 to considerably over that amount, but does not approach anywhere near the amount of $1881.60 which was awarded in the verdict.

The evidence on Count III is also insufficient to support the verdict in that there is no proof whatever of compliance by plaintiff with the several terms of the lease and modification agreement on his part to be performed. One who himself breaches a contract cannot recover for a subsequent breach by the other party.

The alleged breach in this case is not satisfactorily proved nor the causal connection with the damage suffered definitely established. The barn was actually built by Calif. Lands and was passed by the state inspector. The plaintiff was not given a permit to sell market milk because he himself did not obtain the required sanitary equipment. The inspector did testify that when the cracks developed in the milk room plaster, as he observed several months after he had passed the building as sanitary, he no longer would consider it passable. However, there is no definite evidence that this cracked plaster was the main or any factor in the inability of plaintiff to market his milk.

It is questionable whether the complaint as to Count III supports any verdict for failure to allege due performance by plaintiff of the matters required of him under the lease. This may possibly be reframed on a new trial, however.

The judgment on Count I is affirmed, and the order granting a new trial on Count II is reversed; the judgment on Count III is reversed and the action as to that count is remanded for a new trial or for such other proceedings as

the trial court may take with regard to the pleadings or issues. Defendants to recover costs of appeal.

Thompson, Acting P. J., and Tuttle, J., concurred.

Plaintiff's petition for a hearing by the Supreme Court was denied December 29, 1941.